### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

STONEWATER ROOFING
LTD CO LLC

CIVIL ACTION NO. 22-1048

VERSUS

JUDGE S. MAURICE HICKS, JR.

MERRYTON BOSSIER LLC,
ET AL.

MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a Motion to Enforce Settlement Agreement and a Motion to Deposit Funds into Registry of Court filed by Defendant Scottsdale Insurance Company ("Scottsdale"). See Record Document 78. Defendants Grace Chiao ("Chiao"), Hui Ping Li, also known as James Lee Monkhouse ("Monkhouse"), and Merryton Bossier, LLC ("Merryton") (collectively, "Defendants") filed an opposition. See Record Document 80. Plaintiff Stonewater Roofing, Ltd. Co. LLC ("Stonewater") also filed an opposition. See Record Document 81. Scottsdale replied. See Record Document 84. For the reasons stated below, both Motions are **GRANTED**.

### BACKGROUND

This suit concerns a roofing company, Stonewater, who agreed to perform repairs on hotel properties owned by Merryton after they suffered storm damage in early 2020. See Record Document 64 at 2. After obtaining an initial award from their insurer, Scottsdale, Merryton engaged Stonewater to perform an inspection and then make all needed repairs on Merryton's roof, as formalized in an agreement ("the Stonewater Proposal") entered on March 26, 2021. See id. at 3–4. The Stonewater Proposal

contained an assignment from Merryton to Stonewater of all rights and proceeds that Merryton may obtain from Scottsdale after resolution of the insurance dispute. See id. at 4.

Because there was a discrepancy between Scottsdale's initial award under the insurance policy and Stonewater's assessment of the roof damage, an independent appraiser and later an "umpire" both provided new estimates for the roof replacement. See id. at 4–6. When Scottsdale continued to dispute the amount needed to make roof repairs, Merryton, Stonewater, and Scottsdale agreed to mediate the matter on December 27, 2021. See id. at 7. As a result of the mediation, Stonewater alleges an agreement ("the Settlement Agreement") was reached whereby the appraisal award was set at $1,500,000 ("$1.5 million"); however, this agreement was never signed by the parties. See id. (Ex. E Settlement Agreement p. 7–8). Despite the mediation, Stonewater alleges it has yet to receive the insurance proceeds or any payment for the repair work it has performed. See id. at 7. Thus, on April 20, 2022, Stonewater filed suit against Merryton, Chiao, Monkhouse, and Scottsdale, alleging breach of contract, quantum meruit, detrimental reliance, and fraud. See Record Documents 1 & 38.

Defendants filed a previous motion to dismiss (Record Document 22), and the Court dismissed Stonewater's quantum meruit and detrimental reliance claims with prejudice. See Record Document 44. The Court denied the motion as to Stonewater's breach of contract claim concerning the Stonewater Proposal, its breach of contract claim concerning the Settlement Agreement, and its fraud claim. See id. The Court granted Stonewater's request for leave to amend its Complaint to "correct any pleading deficiencies" to allow it to plead with more particularity any additional allegations that may

satisfy the heightened standard required for fraud. <u>See</u> Record Document 43 at 11. On April 11, 2023, Defendants filed another motion to dismiss (Record Document 71) Stonewater's fraud claim. The Court denied the motion on September 3, 2024. <u>See</u> Record Documents 102 & 103.

## LAW AND ANALYSIS

### I. Motion to Enforce Settlement Agreement.

The Fifth Circuit has "long recognized a district court's 'inherent power to recognize, encourage, and when necessary enforce' parties' settlement agreements." <u>Wise v. Wilkie</u>, 955 F. 3d 430, 434 (5th Cir. 2020). When "'the rights and liabilities derive from state law, then federal courts apply state law to determine the validity of the agreement.'" <u>Billiot v. Bankers Specialty Ins. Co.</u>, No. 22-2331, 2024 WL 3584403, at *3 (E.D. La. Mar. 19, 2024) (quoting <u>Jason v. Par. of Plaquemines</u>, No. 16-2728, 2017 WL 993152, at *2 (E.D. La. Mar. 15, 2021) (citing <u>Lefevre v. Keaty</u>, 191 F. 3d 596, 598 (5th Cir. 1999))). "Under Louisiana law, settlement agreements are referred to as 'compromises.'" <u>Id.</u> (citing LA. CIV. CODE art. 3071).

"A compromise is valid when it possesses the essential elements of a general contract." <u>Id.</u> (citing <u>Horace Mann Ins. Co. v. Cas. Reciprocal Exch.</u>, 383 So. 2d 1040, 1042 (La. App. 1 Cir. 1980)). Certain requirements must be met, "including mutual intent evidence by offer, acceptance, and a writing or recitation of the compromise in open court." <u>Id.</u> (citing <u>Rivett v. State Farm Fire & Cas. Co.</u>, 508 So. 2d 1356, 1359 (La. 1987); LA. CIV. CODE art. 1927; LA. CIV. CODE art. 3072). In Louisiana, attorneys must "obtain

their clients' clear and express consent before enter[ing] into a binding agreement." Id. (citing Smith v. Schultz, 546 So. 2d 596, 597 (La. Ct. App. 1989)).

## II. Motion to Deposit Funds into Registry of the Court.

Federal Rule of Civil Procedure 67 provides, "If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party…may deposit with the court all or part of the money or thing, whether or not that party claims any of it…." FED. R. CIV. P. 67(a). "'The purpose of a deposit under Rule 67 is to relieve the depositor of responsibility for the money or thing in dispute while the parties litigate their differences with respect to the res.'" Berry v. Chase Home Fin. LLC, No. 09-116, 2010 WL 582550, at *2 (S.D. Tex. Feb. 12, 2010) (quoting In re Craig's Stores of Tex., Inc., 402 F. 3d 522, 530 (5th Cir. 2005)). "Whether the rule should be available in any particular case is a matter committed to the sound discretion of the trial court." Id. (citing Cajun Electric Power, Co-op., Inc. v. Riley Stoker Corp., 901 F. 2d 441, 446 (5th Cir. 1990)).

## III. Overview of Motions.

In its Motions, Scottsdale argues that Louisiana law supports the enforcement of the Settlement Agreement because none of the elements needed to invalidate the agreement are present. See Record Document 78-1 at 6. Scottsdale contends a compromise was perfected upon counsel for Merryton and Stonewater's written acceptance of the Settlement Agreement set forth in the December 28, 2021 email correspondence and Merryton and Stonewater's December 29, 2021 acceptance. See id. at 9. Scottsdale furthers asserts the Settlement Agreement is unambiguous, was

reduced to writing, and thus satisfies the Louisiana requirements for an enforceable compromise agreement. See id.

Additionally, Scottsdale submits that leave of court to deposit the settlement funds is warranted. See id. Despite Merryton and Stonewater's ongoing disputes, Scottsdale argues that the terms of the Settlement Agreement are unaffected, and it is not implicated. See id. Scottsdale contends that granting its Motion would facilitate judicial economy and allow it to satisfy its obligations under the Settlement Agreement. See id. at 10. Ultimately, Scottsdale requests the Court to do the following: (1) grant its Motions; (2) order Stonewater and Merryton to sign the Release within five days of the Court's order; (3) grant Scottsdale leave to deposit the settlement funds into the registry of the Court within fifteen days of the Court's order; (4) dismiss all claims against it in the underlying action; and (5) order Defendants to pay the attorney fees and costs Scottsdale has been forced to incur. See id. at 11.

Defendants filed a limited opposition to Scottsdale's Motions. See Record Document 80. Defendants do not oppose the ultimate relief sought by Scottsdale; however, they oppose Scottsdale's request for enforcement of the Release, which is attached as Exhibit 1 to its Motion to Enforce Settlement Agreement. See id. at 1. As an alternative resolution, Defendants propose a revised settlement agreement, which they agree to execute upon the Court's order. See id.

Defendants support their opposition with several arguments. First, they should not be forced to sign an agreement containing terms that are disputed. See id. Defendants do not agree to certain provisions pertaining to alleged contractual obligations between Merryton and Stonewater, and they did not execute the Settlement Agreement. See id. at

5

2. Second, their revised settlement agreement should be executed as an alternative. See id. Defendants submit their revised version merely removes the "whereas" clauses from the original draft to which they objected to but maintains the ultimate outcome, whereby Scottsdale would deposit $1.5 million into the registry of the Court and be absolved from liability in this matter. See id.

Stonewater also filed an opposition, stating that it is not opposed to enforcing and applying the Settlement Agreement prepared by Scottsdale as written. See Record Document 81 at 1. Stonewater opposes any revisions that would contradict the clear and unambiguous language of the Settlement Agreement. See id. Stonewater claims the mediation was not instituted to resolve the insurance claim; rather, it was instituted to avoid litigation with Scottsdale for failure to pay the appraisal award. See id. at 2.

Additionally, Stonewater argues that Scottsdale's Motion seeks enforcement of the Settlement Agreement for its release but re-writes the terms for its release. See id. at 4. Stonewater contends that the Motion asks the Court to change certain terms by allowing the deposit of $1.5 million into the registry of the Court. See id. at 5. Stonewater states it did not agree to that. See id. Moreover, Stonewater submits that Scottsdale's Motion ignores the cause for which Stonewater agreed to settle. See id. at 6. Stonewater claims it entered into the Settlement Agreement to reduce its exposure; however, the instant Motion ignores this cause and takes $369,455.63 less than the appraisal award. See id. If the Court grants Scottsdale's Motion, Stonewater states that its cause no longer exists. See id. at 7. While Stonewater is not interested in rescinding the Settlement Agreement for error in cause, it asserts that the agreement is enforceable as written. See id.

Stonewater contends that Defendants' and Scottsdale's alleged changes to the Settlement Agreement should not be enforced. See id.

Scottsdale replied, providing that while there are outstanding issues which affect its ability to perform under the Settlement Agreement, the agreement's enforceability is unaffected. See Record Document 84 at 2. Scottsdale further argues that the dispute between Merryton and Stonewater over entitlement to the settlement funds cannot operate to vitiate the Settlement Agreement, which was reached in good faith between the parties in mediation. See id. Scottsdale points out that neither Stonewater nor Merryton dispute that the Settlement Agreement is valid and enforceable. See id. at 2, 3. Additionally, Scottsdale asserts that Stonewater's request that it deposit the entirety of the appraisal award into the Court's registry is unfounded and contrary to law. See id. at 6. Scottsdale reiterates its requested relief, as previously stated above. See id. at 9.

**IV. Analysis.**

The Settlement Agreement in the instant case was reduced to writing but not signed by any of the parties. See Record Document 38 at 6–7 (Ex. E Settlement Agreement p. 7–8); see also Record Document 43 at 6. Scottsdale has attached to its Motion an exhibit that contains an email chain indicating that the parties did in fact intend the Settlement Agreement to be the full compromise between the parties. See Record Document 78-3. The Fifth Circuit has held that the writing requirement "does not mean…that everything intended to be compromised must be contained in one document." Parich v. State Farm Mut. Auto. Ins. Co., 919 F. 2d 906, 913 (5th Cir. 1990). Rather, "multiple documents which, when read together, outline the obligations of each party and evidence each party's acquiescence in the agreement may effect a valid compromise

agreement." Id. (citing <u>Felder v. Ga. Pac. Corp.</u>, 405 S. 2d 521, 523–24 (La. 1981); <u>Jacobson v. Harris</u>, 503 So. 2d 540, 542 (La. App. 4 Cir. 1987), <u>cert. denied</u>, 503 So. 2d 1019 (La. 1987)). In <u>Parich</u>, the Fifth Circuit found that two signed letters exchanged by counsel for the parties satisfied the writing requirement. Id. at 914.

"A signature on an e-mail may constitute a valid electronic signature, provided the signature was made with the intent to sign the record." <u>Mack Energy Co. v. Red Stick Energy, LLC</u>, No. 16-1696, 2020 WL 13260416, at *3 (W.D. La. Mar. 19, 2020). While "an e-mail exchange may constitute a valid and enforceable written settlement agreement…it does not constitute an enforceable settlement agreement if the e-mail correspondence clearly contemplated a later, final form of the settlement agreement." Id. at *4. In <u>Bombet v. Donovan</u>, the district court held that even though "the party's email may be indicative of an agreement in principle, the correspondence fails to specify the terms of the alleged compromise." No. 13-00118, 2014 WL 991736, at *1 (M.D. La. Mar. 13, 2014). The emails in <u>Bombet</u> "merely discussed preparing the documents necessary to consummate the agreement…the terms of the referenced agreement [were] not memorialized." Id. The district court held that no written evidence could illustrate a meeting of the minds on specific terms contained within the compromise. Id. However, even if there was a meeting of the minds, the court stated that "the compromise would still be invalid and unenforceable because both parties did not sign the alleged compromise." Id. at *3.

In the instant case, the Court agrees with Scottsdale that the dispute between Merryton and Stonewater about how the settlement funds should be distributed does not invalidate the parties' cause for executing the Settlement Agreement. <u>See</u> Record Document 84 at 4. While the Settlement Agreement itself was not signed, the email

correspondence between counsel satisfies the writing requirement. On December 28, 2021, Thomas Peyton ("Peyton"), counsel for Scottsdale, started an email chain with Chris Patin ("Patin"), lead counsel for Stonewater, and Preston Dugas ("Dugas"), counsel for Merryton titled "Settled – Merryton Bossier." <u>See</u> Record Document 78-3.

Peyton's first email confirmed the terms of the Settlement Agreement reached at the mediation, asking Patin and Dugas "to confirm [they] have authority to enter into the settlement and bind [their] respective clients and that the agreement is not in violation of any by-law, covenants and/or other restrictions placed upon them by their respective entities." <u>See id.</u> Dugas confirmed he has authority to settle on behalf of Merryton, and did not state any violations. <u>See id.</u> at 2. Dugas stated, "I do want and require either my law firm's name on the check or Chris'. I do not want a situation with no law firm on the check, because this will go into one of our IOLTA accounts." <u>See id.</u> In response, Peyton agreed to Dugas's terms. <u>See id.</u> Patin also agreed to the Settlement Agreement and confirmed he had authority to settle on behalf of Stonewater. <u>See id.</u> at 1. He further provided, "I would want Laperouse, APLC on the check. We have agreed with Preston to hold the check in our IOLTA account pending resolution between Merryton/Stonewater." <u>See id.</u>

The Court finds that the email correspondence between Peyton, Patin, and Dugas satisfies the requirements of a valid and enforceable compromise under Louisiana law. Unlike <u>Bombet</u>, counsel was not merely discussing preparation of the documents necessary to consummate the agreement. Rather, there was a meeting of the minds as to the specified terms of the compromise. The parties agreed that payment of the

settlement funds would be made within 30 days of receipt of a fully executed and notarized Release by all parties to the agreement. See id. at 3.

Defendants and Stonewater dispute how the settlement funds should be paid; however, they do not dispute the enforceability of the Settlement Agreement. In fact, Defendants do not oppose the ultimate relief sought by the instant Motion; rather, they oppose the Settlement Agreement's reference to certain "contracts" between Merryton and Stonewater. See Record Document 80 at 1–2. The issue of whether the contracts between Merryton and Stonewater are valid will be discussed in a subsequent ruling addressing the two pending Motions for Summary Judgment (Record Documents 90 & 92).

Additionally, Stonewater is not opposed to enforcing the Settlement Agreement prepared by Scottsdale. See Record Document 81 at 1. Stonewater takes issue with Defendants proposed new version of the Settlement Agreement, which this Court does not view as valid and enforceable. See id. at 4. Stonewater also has a problem with Scottsdale's preferred method of deposit for the $1.5 million. See id. at 5. However, as previously stated, the district court has sound discretion when determining how the funds should be deposited. Therefore, Stonewater's arguments do not invalidate the agreed upon Settlement Agreement. The remaining disputes between Merryton and Stonewater regarding the settlement funds can be resolved at a later time, as evidenced in the Settlement Agreement. A fully executed and notarized Release cannot be implemented without a valid and enforceable Settlement Agreement. Therefore, the Court will enforce the Settlement Agreement and grant leave to Scottsdale to deposit the $1.5 million in

settlement funds into the registry of the Court. Merryton and Stonewater can then further litigate other outside disputes.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Scottdale's Motion to Enforce the Settlement Agreement and Motion to Deposit Funds into Registry of Court (Record Document 78) are **GRANTED**.[1] Stonewater and Merryton are hereby ordered to sign the Release (Record Document 78-4) within five days of the Court's Order. Scottsdale is granted leave to deposit the $1.5 million in settlement funds into the registry of the Court within fifteen days of the Court's Order.

**IT IS FURTHER ORDERED** that all claims against Scottsdale are **DISMISSED WITH PREJUDICE**. Defendants are ordered to pay the reasonable attorney fees and costs Scottsdale has incurred in connection with these Motions. Any dispute contemplated by this Order regarding attorney fees and costs shall require the personal appearance of all counsel in open Court and on the record.

An Order consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 14th day of February, 2025.

_____

UNITED STATES DISTRICT COURT JUDGE

---

[1] If counsel wishes to conduct further discussion of these issues, the Court will entertain personal appearance of all counsel in open Court and on the record.