**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

STONEWATER ROOFING LTD CO, LLC

CIVIL ACTION NO. 22-1048

VERSUS

JUDGE S. MAURICE HICKS, JR.

MERRYTON BOSSIER, LLC, ET AL.

MAGISTRATE JUDGE HORNSBY

**MEMORANDUM RULING**

Before the Court are two pending motions filed by Plaintiff, Stonewater Roofing LTD. Co., LLC ("Stonewater"). The first motion is a Daubert Motion to Exclude Testimony of William J. Cowley (Record Document 146). Defendants opposed this motion and Stonewater replied. See Record Documents 152 & 154. The second motion is a Motion in Limine to Exclude or Limit the Opinions and Testimony of William J. Cowley (Record Document 153). For the reasons set forth below, both motions are **DENIED**.

**FACTUAL & PROCEDURAL BACKGROUND**

A full recitation of the facts in this case is set forth in the Court's prior Memorandum Rulings (Record Documents 104 & 106). In brief, this litigation arises from hail damage to a hotel owned by Defendants, Merryton Bossier, LLC, Grace Chiao, and Hui Ping Lee (collectively, "Merryton") in Bossier City, Louisiana, in 2020. See Record Document 106 at 1. Merryton engaged Stonewater to perform roof repairs, contingent upon insurance approval by Scottsdale Insurance Company ("Scottsdale"). See id. at 2–3. After appraisers assessed the damage, Scottsdale refused to approve the work based on the estimates provided. See id. at 3–4. The parties proceeded to mediation, and an amount of $1,500,000 was agreed upon. See id. at 4. However, the parties never signed the

mediation agreement, and Merryton later informed Stonewater that they would not proceed with the work. See Record Document 104 at 2. It is disputed exactly what work Stonewater performed. See Record Document 155 at 7. Following this, Stonewater filed suit (Record Document 1), and Scottsdale filed a motion to enforce the settlement agreement, leading to the deposit of the $1,500,000 amount into the court registry. See Record Documents 78 & 104. Stonewater now claims a right to those funds, while Merryton disputes it. Stonewater and Merryton both filed motions for summary judgment (Record Documents 90 & 92), and the Court ruled that a contract with a suspensive condition existed, but the question of whether that condition was fulfilled will be determined at trial. See Record Document 106. As a result, Stonewater's claims for fraud and breach of contract remain pending for trial.

To support their respective positions, the parties rely on expert testimony. Stonewater retained Robert Norrell ("Norrell") to assess the cost of performing the roofing work that was never completed. See Record Document 152-5. In response, Merryton retained William Cowley ("Cowley") as a rebuttal expert to critique Norrell's methodology, assumptions, and pricing analysis. See Record Document 152-7. Stonewater now argues that Cowley's testimony should be excluded, asserting that his testimony does not meet the requirements of Rules 401–403 and 702. See Record Documents 146 & 153.

**LAW & ANALYSIS**

I.    **Summary of the Arguments**

Stonewater contends that Cowley employed no recognized or reproducible methodology and instead conducted only a "paper review" of Norrell's report and underlying documents. See Record Document 146-2 at 6–8. According to Stonewater,

this type of review is insufficient for an expert's analysis. <u>See id.</u> Stonewater further argues that Cowley's opinion regarding the typical overhead and profit being 10% each is unsupported by anything except Cowley's subjective opinion. <u>See id.</u> at 10–11. Additionally, Stonewater urges that Cowley's critique of Norrell's dates used for pricing is insufficient because Cowley offers no "independent calculation applying date-specific pricing …." <u>Id.</u> at 12. Stonewater also contends that Cowley's reliance on national, generalized data fails to consider the specific circumstances of this case. <u>See id.</u> Additionally, Stonewater argues that Merryton failed to timely provide a signed expert report in compliance with the Court's Scheduling Order and Federal Rule of Civil Procedure 26, asserting that the signed version of Cowley's report was produced only after the applicable deadline had passed. <u>See</u> Record Document 154 at 1.

Merryton opposes the motion, asserting that Cowley's testimony is admissible and that Stonewater's criticisms go to the weight of the evidence rather than its admissibility. <u>See</u> Record Document 152. Merryton emphasizes that Cowley was retained solely as a rebuttal expert and argues that rebuttal testimony is subject to different standards. <u>See id.</u> at 7. According to Merryton, Cowley was not required to generate an independent methodology, but rather to identify flaws, unsupported assumptions, and internal inconsistencies in Norrell's analysis. <u>See id.</u> Merryton contends that Cowley appropriately critiqued Norrell's use of inconsistent pricing dates, failure to adequately account for inflation, and use of an inflated profit margin. <u>See id.</u> at 7–9.

In a separate Motion in Limine (Record Document 153) Stonewater again challenges Cowley's testimony. The motion makes several arguments identical to the <u>Daubert</u> motion, including arguments on Cowley offering legal conclusions and critiquing

Norrell's price inputs. See id. at 4–5. However, the Motion in Limine does introduce arguments under Rules 401 through 403. See id. at 5–7. Stonewater argues that Cowley's opinions are irrelevant under Rules 401 and 402 because his own argument that the lower 2020 price inputs should be used results in a higher profit margin than the current 49% that Cowley already characterizes as excessive. See id. at 5. Thus, Stonewater maintains that his analysis is internally inconsistent. See id. Next, Stonewater contends that Cowley's testimony should be excluded under Rule 403 because it is misleading to the jury. See id. at 6–7. This argument largely mirrors Stonewater's argument from the Daubert motion—that Cowley's opinions are based on nothing more than his subjective judgment. See id.

## II.    **Daubert Framework**

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703 and the standards articulated in Daubert v. Merrell Dow Pharmaceuticals, Inc.. See 509 U.S. 579 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

According to the Daubert Court, Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." 509 U.S. at 597.

Daubert provided an illustrative list of factors for courts to use when evaluating an expert's reliability. See Jackson v. N. Caddo Hosp. Serv. Dist., 2024 WL 697587, at *2 (W.D. La., 2024) (citing Daubert, 509 U.S. at 592–94). The factors include "whether [the expert's opinion] has been subjected to peer review and publication, its known or potential error rate and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community." Daubert, 509 U.S. at 580. The Daubert Court added, that "[t]he inquiry is a flexible one ...." Id. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002).

The Fifth Circuit has emphasized that expert testimony must be grounded in "the methods and procedures of science" rather than "subjective belief or unsupported speculation." Moore v. Ashland Chem., Inc., 151 F.3d 269, 275 (5th Cir. 1998). The proponent of the expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. See id. at 276. However, the proponent need not prove that the expert's opinion is correct, but only that it is reliable. See id.

Ultimately, the Court must determine whether the expert is qualified, whether the methodology is reliable, and whether the testimony will assist the trier of fact. If these conditions are not met, exclusion is warranted, but "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000).

## III. Analysis

### a. Cowley's Qualifications

The Court first notes that Cowley's qualifications are not being challenged here. As Merryton highlights, Cowley has 44 years of experience in the construction industry,

including expertise in claims adjusting and roofing. <u>See</u> Record Document 152 at 4–5. His qualifications are sufficient to offer opinions on the reasonableness of cost estimates and the methodology employed by Norrell. Stonewater does not contest these credentials, so the Court need not consider his qualifications in detail for this motion.

    b. <u>Posture of the Issue: Limited Rebuttal Expert</u>

This <u>Daubert</u> motion is different from the typical challenge against an expert. In most cases, an expert is retained to provide an independent analysis, and that expert's qualifications and methods are scrutinized under <u>Daubert</u>. <u>See</u> 509 U.S. 579. However, here, Magistrate Judge Hornsby allowed Stonewater to introduce Norrell's cost analysis later in the case, with Merryton being allowed to retain Cowley as a rebuttal expert under similar constraints. <u>See</u> Record Document 127. As a result, Cowley's role is limited to critiquing the methodology and conclusions of Norrell's report.

Because Cowley is not offering new opinions about the cost of repairs or liability but instead critiques the assumptions and conclusions of Norrell, he is not required to generate an entirely new calculation for repair costs. Merryton contests liability, so it would be illogical for its expert to assume liability for purposes of preparing a competing cost estimate. Thus, Cowley is only obligated to assess whether Norrell's assumptions and methodology are reasonable.

In this context, the standards applicable to rebuttal experts are different from those governing affirmative expert testimony. A rebuttal expert's function is to identify flaws in the opposing expert's analysis, not necessarily to construct a competing model. Although courts have recognized that rebuttal experts may, in appropriate circumstances, offer independent opinions or utilize alternative methodologies, nothing in Rule 26 requires

them to do so. See U.S. Dist. Ct. S. Dist. of Texas Houston Div. U.S. of Am. v. Solvay, 2016 WL 1107014, at *3 (S.D. Tex. 2016). In fact, a rebuttal expert report containing an entirely independent analysis may be struck down as improper rebuttal evidence. See Club v. Energy Future Holdings Corp., 2014 WL 12690016, at *4 (W.D. Tex. 2014) (citing Home Design Servs., Inc. v. Hibiscus Homes of Fla., Inc., 2005 WL 2465020, at *5 (M.D. Fla. 2005) (excluding portion of expert report that "both rebuts the report of [the other side] and offers separate and distinct analysis" on the ground that an "independent analysis" "cannot be classified as rebuttal evidence" even if it "casts doubt on an opposing expert's report"). Thus, Cowley is not obligated to offer an independent repair costs estimate, and Cowley's decision to limit his opinions to critiquing Norrell's methodology falls squarely within the permissible scope of rebuttal.

c. Untimely Signed Report

Plaintiff raises the procedural issue that Cowley's report was not signed on time as required by Rule 26 and the Court's Scheduling Order (Record Document 127). Rule 26(a)(2)(B) requires that an expert submit a signed, written report. Rule 37(c) provides:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Court must use the following factors to determine whether the failure to disclose was justified or harmless: "(1) the explanation for the failure to disclose; (2) the importance of the evidence; (3) the potential prejudice to the opposing party of admitting the evidence; and (4) the possibility of curing such prejudice by granting a continuance." Ikerd v. Berkshire Hathaway Homestate Ins. Co., 2023 WL 8480293, at *1 (E.D. La. 2023) (citing Betzel v. State Farm Lloyds, 480 F.3d 704, 707 (5th Cir. 2007)).

Here, Stonewater argues that Cowley's expert report should be excluded because it was not signed by the deadline set forth in the Court's Scheduling Order. <u>See</u> Record Document 146-2 at 15. The record reflects that although Cowley's report was initially served without a signature, Cowley later executed the report, and a signed copy was provided to Stonewater. <u>See</u> Record Document 152-9. The contents of the report did not change, and Stonewater was fully apprised of Cowley's opinions prior to delivery of the signed copy.

Applying the <u>Betzel</u> factors, the Court finds that any failure to timely provide a signed report was harmless. First, the omission of the signature appears to have been a mere oversight, rather than an attempt to evade disclosure obligations. Second, Cowley's testimony is important to Merryton's rebuttal of Norrell's cost analysis, so exclusion would be a disproportionate sanction given the nature of the deficiency. Third, Stonewater has not demonstrated prejudice arising from the lack of a timely signature, as it received the report itself on time, was aware of the substance of Cowley's opinions, and had the opportunity to depose Cowley. Accordingly, the Court finds that the initial failure to provide a signed expert report does not warrant exclusion under Rule 37(c).

### d. Cowley's Critique of the $1,500,000 Figure

Stonewater argues that Cowley offers an impermissible legal conclusion by stating that there is no contractual or other basis for using the $1,500,000 mediation amount as the price for the roofing work.[1] <u>See</u> Record Document 152 at 7. The Court disagrees and finds this portion of Cowley's report admissible.

---

[1] The $1,500,000 figure reflects the amount agreed upon during mediation between Merryton and Scottsdale following the appraisal process. <u>See</u> Record Document 64-5.  Although Merryton originally refused to sign the mediation agreement, Scottsdale moved to enforce it. <u>See</u> Record Document 78. The

Norrell's damages analysis assumes that the $1,500,000 mediation amount represents a binding contractual price and uses that figure as the foundation for calculating Stonewater's alleged lost profits. Cowley's discussion of the $1,500,000 figure arises solely in response to that assumption. Cowley does not attempt to resolve whether the mediation agreement is legally enforceable or whether Stonewater is ultimately entitled to the insurance proceeds. Rather, he critiques Norrell's assumption that the mediation amount may be treated as a fixed contract price for purposes of calculating damages. When read in context, Cowley's critique is directed at Norrell's methodology rather than the legal effect of the mediation agreement. Moreover, Stonewater's argument that Cowley improperly opines on contract enforceability overlooks the fact that Norrell's analysis assumes that the $1,500,000 figure is contractually binding. Accordingly, the Court finds that Cowley's discussion of the $1,500,000 mediation amount falls within the proper scope of rebuttal expert testimony and does not constitute an impermissible legal conclusion.

e.  The Discrepancy Between the Date of Loss and Pricing (2020 vs. 2025)

Cowley points out that Norrell used pricing from 2025, whereas the loss occurred in 2020. See Record Document 152-7 at 3. This discrepancy in pricing data is a valid critique. Cowley's use of the U.S. Department of Labor Statistics Producer Price Index to highlight price increases in non-residential roofing from 2020 to 2025 is a valid methodology for adjusting for inflation. Under Rule 703, experts may base their opinions on sources that other experts in their particular field would reasonably rely on. Stonewater

---

Court granted that motion, ordering Scottsdale to deposit the $1,500,000 into the Court's registry. See Record Document 104. Scottsdale thereafter deposited $1,500,000 into the registry of the Court, and Stonewater now claims an entitlement to those funds, while Merryton disputes that claim.

argues that Cowley's reliance on government statistics is improper because it is "broad, national data—without a bridge to the specific job or loss date …." Record Document 146-2 at 9. The Court disagrees.

As explained above, Cowley is not required to produce an independent cost estimate, and he did not use the Producer Price Index to calculate damages or to offer a substitute cost estimate. Instead, Cowley relied on it to demonstrate that Norrell's assumptions regarding pricing and inflation were unsupported. As for whether the Producer Price Index is the best source for this data can be explored on cross examination. Any lack of project-specificity goes to the weight of Cowley's testimony, not its admissibility. Accordingly, the Court finds that Cowley's critique of Norrell's use of 2025 pricing, including his reliance on the Producer Price Index, constitutes a permissible rebuttal opinion under Rule 702.

f.   Scope of Rebuttal

Next, Stonewater argues that Cowley's testimony reaches beyond the scope of allowable rebuttal testimony because he only critiques the pricing inputs Norrell used (2020 vs. 2025) rather than challenging Norrell's "formula." See Record Document 154 at 4. The Court finds this distinction unpersuasive.

The scope of rebuttal testimony is ordinarily left to the discretion of the trial court. See Tramonte v. Fibreboard Corp., 947 F.2d 762, 764 (5th Cir. 1991). A rebuttal expert is permitted to "explain[], repel[], counteract[], or disprove[] evidence of the adverse party's initial report." CEATS, Inc. v. TicketNetwork, Inc., 2018 WL 453732, at *3 (E.D. Tex. 2018). Rebuttal testimony need not offer an independent analysis; rather, it may

focus on identifying flaws in the initial expert's opinions. See Gibson Brands, Inc. v. Armadillio Distrib. Enters., Inc., 2021 WL 231764 (E.D. Tex. 2021).

Norrell's damages analysis depends on the pricing data he selected, and Cowley's testimony directly challenges the accuracy of those inputs. Stonewater's attempt to draw a distinction between critiquing Norrell's "formula" and critiquing the pricing inputs used within that formula is an artificial one. Pricing assumptions are an integral component of the methodology itself, and challenging those assumptions is a proper means of rebutting the resulting conclusions.

g. Overhead and Profit

Stonewater contends that Cowley's statement that 10% overhead and 10% profit is the industry standard should be excluded because Cowley did not produce independent research supporting this statement. See Record Document 146-2 at 10. The Court finds that Cowley was not required to produce research to support this statement. The Fifth Circuit has held that testimony of an expert can be reliable even when it is largely based on "first-hand observations and professional experience …." Pipitone, 288 F.3d at 246. With 44 years of experience, Cowley is qualified to testify about standard industry practices in roofing, including typical overhead and profit margins.

h. Cowley's Opinion Will Assist the Trier of Fact

Stonewater argues that Cowley's opinions will not assist the trier of fact and amount to nothing more than subjective commentary supported only by his credentials. See Record Document 146-2 at 14. The Court disagrees. Under Rule 702(a), expert testimony is admissible if it "will help the trier of fact to understand the evidence or to determine a fact in issue."

Cowley's testimony assists the trier of fact by explaining industry practices and by identifying potential deficiencies in the assumptions and inputs underlying Norrell's damages analysis. These are matters that are not within the common knowledge of a lay juror. Evaluating the reasonableness of pricing assumptions, inflation adjustments, and customary overhead and profit margins in the commercial roofing industry requires specialized knowledge. Cowley's opinions provide context and explanation that will help the jury in evaluating Norrell's conclusions. Any weaknesses in Cowley's opinions may be explored through cross examination. Accordingly, the Court finds that Cowley's testimony satisfies Rule 702(a) and will assist the trier of fact.

    i.  <u>Motion in Limine</u>

Stonewater's Motion in Limine (Record Document 153) introduces arguments under Rules 401 through 403. Under Rule 401, evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." Under Rule 402, irrelevant evidence is inadmissible. Even relevant evidence, however, may be excluded under Rule 403 "if its probative value is substantially outweighed by a danger of … confusing the issues [or] misleading the jury …."

The Court has already determined that Cowley's testimony is admissible under Rule 702. The majority of the arguments raised in Stonewater's Motion in Limine merely repackage those same <u>Daubert</u> challenges under the guise of Rules 401, 402, and 403. To the extent Stonewater's motion reiterates arguments already rejected, those arguments are denied for the same reasons stated above.

However, Stonewater does raise an additional relevance argument. Stonewater contends that Cowley's opinions are irrelevant under Rules 401 and 402 because Cowley's assertion that 2020 pricing inputs should have been used would, if applied within Norrell's model, produce a profit margin higher than the 49% margin Cowley already characterizes as excessive. <u>See</u> Record Document 153 at 5. According to Stonewater, this alleged inconsistency renders Cowley's testimony irrelevant and therefore inadmissible.

The Court finds this argument unpersuasive. Stonewater's reasoning rests on the assumption that the $1,500,000 mediation amount constitutes a fixed and binding contract price. This is a premise that Cowley does not accept and that remains disputed in this litigation. Framing Cowley's rebuttal opinions as internally inconsistent requires acceptance of the assumptions Cowley challenges. Because that premise is disputed, this argument does not undermine the relevance of Cowley's testimony.

Accordingly, the Court finds that Cowley's opinions are relevant under Rules 401 and 402 and that their probative value is not substantially outweighed by any danger of misleading the jury under Rule 403. Stonewater's Motion in Limine is therefore **DENIED**.

**CONCLUSION**

Based on the reasons explained above, Stonewater's <u>Daubert</u> Motion to Exclude Testimony of William J. Cowley (Record Document 146) and Motion in Limine to Exclude or Limit the Opinions and Testimony of William J. Cowley (Record Document 153) are **DENIED.**

An order consistent with this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 17th day of December, 2025.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE